**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DANIEL J. CUTIE and CUTIE PHARMA-CARE,**
**INC.,**

                                        **Plaintiffs,**

        **vs.**                                                    **1:11-cv-66**
                                                                   **(MAD/RFT)**

**JAMES G. SHEEHAN, New York State Medicaid**
**Inspector General, in his individual and official**
**capacities; ANGELO J. RUPERTO, in his**
**individual and official capacities; MARTIN**
**MCMAHON, in his individual and official**
**capacities; and JOHN AND JANE DOES # 1-20,**
**in their individual and official capacities,**

                                        **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**HISCOCK & BARCLAY, LLP**                  **JESSICA A. NORGROVE, ESQ.**
80 State Street                             **LINDA J. CLARK, ESQ.**
Albany, New York 12207
Attorneys for Plaintiffs

**OFFICE OF THE NEW YORK**                  **C. HARRIS DAGUE, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        On January 18, 2011, Plaintiffs commenced the present civil rights action pursuant to 42

U.S.C. § 1983.  Currently before the Court is Defendants' motion to dismiss and, in the event that

the Court grants Defendants' motion, Plaintiffs' cross motion to amend their complaint.  *See* Dkt.

Nos. 13, 15.

## II. BACKGROUND

Plaintiff Daniel J. Cutie has been a licensed pharmacist in New York State since 1989. *See* Dkt. No. 1 at ¶ 16.  Plaintiff Cutie Pharma-Care, Inc. ("Cutie Pharma-Care") is a family owned and operated retail pharmacy created in 2002, and is located in Greenwich, New York. *See id.*

### A.       The Medicaid system

Plaintiffs are Medicaid "providers" that receive financial reimbursements for services that they provide to certain individuals covered by the Medicaid Act, which is set forth in Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.  See id.* at ¶ 19.  Medicaid is a cooperative federal-state program designed to provide federal funds to individual states in order to ensure that low-income families with dependent children, indigent and disabled individuals, and others with insufficient income and/or resources are able to meet the costs of necessary medical care.  *See id.* at ¶ 20.  A state's participation in the Medicaid program is voluntary, but once a state chooses to participate, it must comply with federal statutory and regulatory requirements.  States participating in the Medicaid program are required to develop a comprehensive plan (the "State Plan") for the provision of services that must be approved by the Secretary of the Department of Health and Human Services, through the Centers for Medicare and Medicaid Services ("CMS"), pursuant to 42 U.S.C. § 1396a.

CMS is the agency that administers Medicaid at the federal level.  42 C.F.R. Part 30 sets forth rules and guidelines that govern CMS, which are binding on all states that participate in the Medicaid program.  Under the Medicaid Act, if a state consents to establishing a State Plan that

satisfies the requirements of Medicaid, the federal government will contribute a specified percentage of the total money expended as "medical assistance" under the State Plan.

New York is one such state that receives these federal funds to provide medical assistance to its indigent citizens under the Medicaid program.  In order to receive federal funds, however, New York must comply with the requirements of the Medicaid Act and with the regulations promulgated by the United States Department of Health and Human Services.

New York has designated the New York State Department of Health ("DOH") as the state agency responsible for the administration of its Medicaid plan pursuant to 42 U.S.C. § 1396a and 42 C.F.R. § 431.10.  In tandem, the New York State Office of the Medicaid Inspector General ("OMIG") has been established by state statute as an independent entity within the DOH to improve and preserve the integrity of the Medicaid program by conducting and coordinating fraud, waste, and abuse control activities for all state agencies responsible for services funded by Medicaid.

**B.      Defendants' alleged conduct**

On June 14, 2006, the New York State Department of Education ("DOE") conducted an inspection of Plaintiff Cutie Pharma-Care, which revealed several "minor" violations with regard to the pharmaceutical services it provided.  *See id.* at ¶ 29.  As a result of the investigation, Plaintiffs accepted a "modest fine, censure and reprimand for these violations from the Department of Education under certain consent agreements."  *See id.* at ¶ 30.  The violations that Plaintiffs admitted to in the consent agreement, however, did not involve dispensing errors or Medicaid fraud or crimes of any type.  *See id.* at ¶ 31.  "Additionally, these minor violations were not of the type, quality or character that typically warrants an exclusion from the Medicaid

provider program and all of the cited violations were corrected by Plaintiffs approximately four

(4) years ago." *See id.*

      Plaintiffs allege that, notwithstanding the consent agreement, "on February 23, 2010,

Plaintiffs received a letter from OMIG dated February 18, 2010 that set forth its intention to

exclude Plaintiffs from participating in the Medicaid provider reimbursement program thirty (30)

days from the date of that notice." *See id.* at ¶ 32.  Plaintiffs claim that OMIG's intention to

exclude was based entirely on the censure and reprimand issued by the DOE.  *See id.* at ¶ 33.

Further, Plaintiffs claim that, prior to sending the letter of intent to exclude, the individual

Defendants "were gathering information on Plaintiffs' customers in an effort to coerce them to

switch pharmacies as part of the plan to destroy Plaintiffs' business." *See id.* at ¶ 35.  "Indeed,

evidence reveals that [Defendant] Ruperto materially and falsely communicated to [Defendant]

McMahon prior to February 22, 2010, 'this pharmacy was found to have accepted back previously

dispensed medications and thereafter re-dispensed them to other residents/facilities,' when in fact,

Defendants were aware that no finding of re-dispensing of returned drugs had ever been made by

the DOH or OMIG." *See id.* at ¶ 36.

      Thereafter, Plaintiffs claim that "evidence reveals that [Defendants] McMahon and

Ruperto then communicated this same false statement, in sum and substance, through electronic

mail to numerous other actors in the DOH and OMIG (including the Doe Defendants) advising

them to identify and contact adult care facilities that utilized the Plaintiffs' services." *See id.* at ¶

37.  Further, Plaintiffs assert that

> [Defendants] Ruperto, McMahon and the Doe Defendants
> researched the likely customers of [Plaintiff] Cutie Pharma-Care
> and then systematically contacted them without the Plaintiffs'
> permission or knowledge, communicating in sum and substance that
> Plaintiffs re-dispensed previously dispensed drugs, committed other
> illegal activities, was going to be 'indicted' and/or subjected to

> criminal prosecution, and encouraged them to switch pharmacies.
> Further, they continued to call those facilities that did not switch
> pharmacies to continue their effort to coerce them to change.

*See id.* at ¶ 38.  Plaintiffs claim that these acts all occurred under Defendant Sheehan's

supervision.  *See id.* at ¶ 39.

Plaintiffs claim that neither DOH nor OMIG has ever taken such preemptive actions with

regard to another pharmacy or pharmacist in similar circumstances and has admitted to the unique

and selective nature of this conduct in its correspondence with Plaintiffs.  *See id.* at ¶ 40.

Although OMIG did not proceed with the planned exclusion of Plaintiff Cutie Pharma-Care from

the Medicaid program due to injunctive relief that Plaintiffs' obtained and OMIG's subsequent

disavowal of the proposed exclusion, Plaintiffs claim that their business has nonetheless suffered

from Defendants' actions.  *See id.* at ¶ 41.

On January 18, 2011, Plaintiffs commenced the present civil rights action.  In the

complaint, Plaintiffs assert  due process and equal protection causes of action, and several state-

law causes of action, including defamation, slander, libel *per se*, tortious interference with

contracts and business relations, and *prima facie* tort.  *See id.* at ¶¶ 45-97.  Plaintiffs seek

prospective injunctive relief, as well as compensatory damages, punitive damages, and attorneys'

fees.

On June 28, 2011, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  *See* Dkt. No. 13.  In their motion, Defendants argue that (1)

they are entitled to Eleventh Amendment immunity as to Plaintiffs' claims against them in their

official capacities; (2) Plaintiffs have failed to allege that Defendant Sheehan was personally

involved in the alleged constitutional violations; (3) they are entitled to qualified immunity; (4)

Plaintiffs' class-of-one equal protection claim must be dismissed as a matter of law; and (5) with

Plaintiffs' federal causes of action dismissed, the Court lacks subject-matter jurisdiction over the remaining state-law causes of action. *See* Dkt. No. 13-1.

## III. DISCUSSION

**A.     Standard of review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

**B.      Eleventh Amendment immunity**

        Defendants argue that they "are entitled to Eleventh Amendment immunity in their official capacities for both federal question and 'pendent' state law claims."  *See* Dkt. No. 13-1 at 4-6. Plaintiffs claim that Defendants are not entitled to Eleventh Amendment immunity because "violations of federal law have been alleged against Defendants in their official capacities and Plaintiffs have requested prospective relief, thereby bringing the claims in the Complaint within the *Ex Parte Young* exception to Eleventh Amendment immunity."  *See* Dkt. No. 15-2 at 13-16.

        The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although by its terms, the amendment bars suit by citizens of one State against another State, the Supreme Court has held that the amendment similarly bars suits against a State by its own citizens.  *See Hans v. Louisiana*, 134 U.S. 1, 10-11 (1890).  "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'"  *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48

7

(2d Cir.1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)).  Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the State, including a state agency in federal court.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *see also Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984).  To the extent that a state official is sued for damages in his official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state."  *Rourke v. New York State Dep't. of Corr. Servs*. 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing, *inter alia*, *Berman Enters., Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir.), *cert. denied*, 510 U.S. 1073, 114 S. Ct. 883, 127 L. Ed. 2d 78 (1994)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) (holding that "[a] claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer").

Under the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), however, a suit may proceed against a state official in his or her official capacity – notwithstanding the Eleventh Amendment – when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted).  "Such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities." *Ghent v. Moore*, 519 F. Supp. 2d 328, 334 (W.D.N.Y. 2007) (citing *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 32 (2d Cir. 1991)) (other citations omitted).

In the present matter, Plaintiffs' first claim is properly characterized as seeking prospective relief from a continuing/ongoing violation of federal law.  Specifically, Plaintiffs state that they

seek "prospective and/or injunctive relief to prevent a continuing violation of Constitutional and federal law in the form of an Order compelling the Defendants to refrain from: any further harassment of Plaintiffs, communication of the false statements, selective enforcement of the OMIG and DOH policies and procedures against them, and contacting Plaintiffs' customers, as well as an Order compelling DOH and OMIG to retract any of the material false statements made to customers." *See* Dkt. No. 1 at ¶ 52. Significantly, however, Defendant Sheehan is no longer the Medicaid Inspector General.[1]   As such, Defendant Sheehan is clearly no longer involved in any alleged continuing violation of Plaintiffs' constitutional rights. Therefore, the Court grants Defendants' motion as to Defendants Sheehan in his official capacity.[2]  *See Hernandez v. Dormer*, No. 09 CV 5549, 2011 WL 817414, *10 (E.D.N.Y. Feb. 25, 2011) (dismissing the plaintiff's claims against the defendants in their official capacities because they no longer held the office in which capacity they were sued). The Court, however, denies the motion to dismiss as to the remaining Defendants.

### C.    Plaintiffs' claims against Defendant Sheehan in his individual capacity

Defendants assert that Plaintiffs have failed to allege that Defendant Sheehan was personally involved in the alleged constitutional violations; and, therefore, these claims must be dismissed. *See* Dkt. No. 13-1 at 6-8. Specifically, Defendants claim that "the only allegation

---

[1] According to the Office of the Medicaid Inspector General's website, on July 13, 2011, James C. Cox became the acting Medical Inspector General. *See* http://www.omig.ny.gov/data/content/view/165/244/ (last visited October 5, 2011).

[2] The Court takes no position as to whether Plaintiffs could properly maintain an action for prospective injunctive relief against the current acting Medicaid Inspector General.

levied against Defendant Sheehan throughout the entire Complaint which purports to describe his role in the alleged wrongdoing is the assertion that Defendants Ruperto and the Doe Defendants acted 'under the supervision of the Defendant Sheehan.'" *See id.* at 7. Plaintiffs assert that they have sufficiently pled Defendant Sheehan's personal involvement and argue that they are entitled to discovery to determine the extent of his involvement in the alleged unconstitutional conduct. *See* Dkt. No. 15-2 at 16-18.

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

Personal involvement in the alleged constitutional violation is a prerequisite to finding a supervisory official liable under section 1983. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quotations omitted). A supervisory official is personally involved in the violation of a plaintiff's constitutional rights if he (1) directly participates in the infraction; (2) fails to remedy the wrong after learning of the violation; (3) creates, or allows to continue, an unconstitutional

practice; (4) is grossly negligent in the management of subordinates who caused the violation; or (5) fails to act after receiving information indicating that constitutional violations were occurring. *See id.*; *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[3]

In the present matter, the Court agrees with Plaintiffs that, at this early stage in the proceedings, they have sufficiently pled Defendant Sheehan's personal involvement in the alleged unconstitutional activities. Specifically, Plaintiffs assert that Defendant Sheehan supervised the acts alleged and the dissemination of materially false statements. *See* Dkt. No. 1 at ¶¶ 39, 62, 74, 89, 94. Further, Plaintiffs claim that each individual Defendant singled Plaintiffs out for disparate treatment. *See id.* at ¶¶ 49, 65. Also, Plaintiffs claim that Defendant Sheehan, among others, failed to provide them with a "name clearing hearing," *see id.* at ¶ 63, and that he failed to retract the false statements despite being requested to do so, *see id.* at ¶ 81.

---

[3] It is unclear whether all five *Colon* bases for supervisor liability remain available in light of the Supreme Court's decision in *Iqbal*, which rejected the notion that a supervisor can be held liable based on "mere knowledge of his subordinate's discriminatory purpose" and instead required a showing of discriminatory purpose by the supervisor himself. *See Iqbal*, 129 S. Ct. at 1948-49.

*Iqbal's* effect has been debated in the district courts. *See, e. g., McCarroll v. Fed. Bureau of Prisons*, No. 9:08-CV-1343, 2010 WL 4609379, *4 (N.D.N.Y. Sept. 30, 2010) (noting that "[s]everal district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories"); *Kleehammer v. Monroe County*, No. 09–CV–6177, 2010 WL 4053943, *8 (W.D.N.Y. Sept. 8, 2010) (implying that only the first and third *Colon* categories survived *Iqbal's* requirement of "active conduct" to impose supervisor liability); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (citing, but disagreeing with, several recent decisions that interpreted *Iqbal* as eliminating all but the first and third *Colon* categories).

It is unnecessary for the Court to decide this issue, however, because Plaintiffs have sufficiently alleged that Defendant Sheehan allowed unconstitutional conduct to continue once learning about it.

The Court finds that, at this early stage, Plaintiffs have sufficiently alleged Defendant

Sheehan's personal involvement in the alleged constitutional violations.  *See Bourgoin v. Weir*,

No. 3:10cv391, 2011 WL 4435695, *5 (D. Conn. Sept. 23, 2011) (citations omitted).  Further, the

Court will permit Plaintiffs to amend their complaint.  In their proposed amended complaint,

Plaintiffs have added additional facts regarding Defendant Sheehan's personal involvement,

which are clearly sufficient to survive the plausibility standard set forth in *Twombly* and *Iqbal*.

*See* Dkt. No. 15-1 at Exhibit "1," at ¶ 39.

Based on the foregoing, the Court denies Defendants' motion to dismiss Defendant

Sheehan in his individual capacity.


**D.      Equal protection claim[4]**

Defendants argue that, after *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008),

Plaintiffs' equal protection claim must fail because they are challenging discretionary state action.

*See* Dkt. No. 13-1 at 13-14.  Further, Defendants claim that Plaintiffs' equal protection claim also

fails because they "do not even attempted to identify within the Complaint a similarly situated

party who received neutral, non-discriminatory treatment."  *See id.* at 15 (citing *Catcove Corp.*,

685 F. Supp. 2d at 333).

The Equal Protection Clause requires the government to treat all similarly situated people

alike.  *See Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of

Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)).

---

[4] Although Plaintiffs' complaint uses the expression "selective enforcement" in describing Defendants' actions, *see* Dkt. No. 1 at ¶ 52, both parties treated Plaintiffs' equal protection claim as a "class-of-one" claim and did not address whether Plaintiffs have attempted to or could maintain a selective enforcement equal protection claim.  As such, the Court will only address the viability of the alleged "class-of-one" claim.

A plaintiff may proceed under the Equal Protection Clause as either a "class of one," *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*) (citations omitted), or under the theory of "selective enforcement," *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citation omitted).

To prevail on a "class of one" equal protection theory, a plaintiff must show that the defendant "intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds*, *Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)).[5]  The plaintiff's burden on a "class of one" claim is "extremely high," and a plaintiff cannot prevail absent a *prima facie* showing that he is "identical in all relevant respects" to the individuals with whom he compares himself.  *Id.* (citation omitted).  Specifically, the plaintiff must establish that

> "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."

---

[5] The Court notes that *Neilson* involved the application of the class-of-one equal protection theory in the public employment context.  Subsequent to the decision in *Neilson*, however, the Supreme Court explicitly held that "the class-of-one theory of equal protection does not apply in the public employment context."  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 595 (2008).  Thus, the Second Circuit "overrule[d] [*Neilson*] . . . to the extent that it conflicts with the holding of *Engquist*."  *Appel v. Spiridon*, 531 F.3d 138, 139-40 (2d Cir. 2008).  Nevertheless, the Second Circuit's discussion in *Neilson* regarding the level of similarity necessary to support a class-of-one equal protection claim has not been overruled.  *See Smith v. Fischer*, No. 9:07-CV-1264, 2009 WL 632890, *10 n.30 (N.D.N.Y. Feb. 02, 2009) (quotation and other citations omitted).

*Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quotation and footnote omitted).[6]

The Supreme Court's decision in *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008), eliminated class-of-one claims for government employees. *Engquist* involved a former state employee who sued his employer after being laid off during an agency reorganization, alleging that she was fired for arbitrary and malicious reasons. *See id.* at 595. The Court analyzed *Olech* and noted that, there, the plaintiff stated a valid class-of-one equal protection claim because she had "'been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* at 601 (quotation omitted). The Court continued, however, that

> [t]here was no indication in *Olech* that the zoning board was exercising discretionary authority based on subjective, individualized determinations – at least not with regard to easement length, however typical such determinations may be as a general zoning matter. Rather, the complaint alleged that the board consistently required only a 15-foot easement, but subjected Olech to a 33-foot easement. This differential raised a concern of arbitrary classification, and we therefore required the State provide a rational basis for it.

*Id.* at 602-03 (citation omitted). Conversely, the *Engquist* Court found that some types of state action inherently "involve discretionary decisionmaking based on a vast array of subjective,

---

[6] Although the Supreme Court used the words "similarly situated" to describe the standard for a "class of one" claim, it is not the same standard of "similarity" as used in a protected-class discrimination claim. *Neilson*, 409 F.3d at 104-05. The difference comes from the purpose of the showing. *See id.* In a claim of discrimination based on group status, the treatment of persons in similar circumstances is offered to "provide, along with other evidence, an evidentiary inference of the use of particular impermissible factors," whereas in a "class of one" claim, "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain." *Id.* (citation omitted).

individualized assessments." *Id.* at 603.  Such state action does not violate the Equal Protection

Clause "when one person is treated differently from others, because treating like individuals

differently is an accepted consequence of the discretion granted." *Id.*  The Court found that

"[t]his principle applies most clearly in the employment context, for employment decisions are

quite often subjective and individualized" and dismissed the plaintiff's claim. *Id.* at 604.  The

Court noted, however, that its holding was limited to finding "that the class-of-one theory of equal

protection has no application in the public employment context – and that is all we decide[.]" *Id.*

at 607.

In *Analytical Diagnostic Labs, Inc.*, the Second Circuit discussed whether *Engquist* is

limited to the public employment context or whether it should extend to other types of

discretionary government behavior.  *See Analytical Diagnostic Labs, Inc.*, 626 F.3d at 141-42.

Joining the Seventh Circuit, the Second Circuit held that "not all discretionary activity is 'off-

limits from class-of-one claims.'"  *Id.* at 142 (quotation omitted).  Quoting *Engquist*, the court

held that there was a "'crucial difference, with respect to constitutional analysis, between the

government exercising the power to regulate or license, as lawmaker, and the government acting

as proprietor, to manage its internal operations.'"  *Id.* (quoting *Engquist*, 553 U.S. at 598, 128 S.

Ct. 2146).  Moreover, the court noted that the "'government has significantly greater leeway in its

dealings with citizen employees than it does when it brings its sovereign power to bear on citizens

at large.'"  *Id.* (quotation omitted).  As such, the court held that, because the department of health

did "not possess unfettered discretion in deciding whether to revoke, suspend or otherwise limit

an existing license[,]" the plaintiffs had a way to distinguish themselves from other labs whom the

department of health allegedly subjected to less scrutiny.  *Id.* (citation omitted); *see also Hanes v.

Zurick*, 578 F.3d 491, 496 (7th Cir. 2009) (noting that "the officer who repeatedly arrests

someone solely because of malice does have a way to distinguish between the citizen repeatedly arrested and the citizen left alone: the officer hates the arrestee").

First, contrary to Defendants allegations, the Second Circuit has made clear that not all discretionary governmental action is beyond the purview of a class-of-one equal protection claim. *See Analytical Diagnostic Labs, Inc.*, 626 F.3d at 141-42.  In *Analytical Diagnostic Labs, Inc.*, which involved a claim remarkably similar to the present matter, the Court permitted the plaintiffs' claim to proceed because they had a way to distinguish themselves from other labs whom the department of health subjected to less scrutiny.  In the present matter, Plaintiffs can distinguish themselves in the same manner.

Further, to the extent that Plaintiffs failed to identify within the complaint a similarly situated party who received neutral, non-discriminatory treatment, Plaintiffs cured this defect in their proposed amended complaint.  Specifically, Plaintiffs attached to the amended complaint a non-exclusive list of pharmacies/pharmacists "who were censured/entered into consent orders during the same time period as Plaintiffs and who were not excluded by OMIG[.]"  *See* Dkt. No. 15-1, at Exhibit "1" at ¶ 40 and Exhibit "B" annexed thereto.  As such, the Court finds that Plaintiffs' proposed amended complaint cures any defect in their class-of-one equal protection claim.

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading shall be freely given when justice so requires.  *See Livingston v. Piskor*, 215 F.R.D. 84, 85 (W.D.N.Y. 2003).  "Absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed."  *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

Since the proposed amendments to the complaint would not be futile, and there is no evidence of undue prejudice to Defendants or dilatory motives by Plaintiffs, the Court grants Plaintiffs' motion to amend their complaint.  Further, as discussed, since the amendments to the complaint cure any defects in Plaintiffs' class-of-one equal protection claim, the Court denies Defendants' motion to dismiss as to this claim.[7]

**D.      Qualified immunity**

Defendants assert that they are entitled to qualified immunity because all of their alleged actions "were wholly lawful, objectively reasonable and did not impinge upon any constitutionally protected rights."  *See* Dkt. No. 13-1 at 10.  Defendants claim that, based upon the findings by the DOE in the consent order, "OMIG and DOH had a statutorily recognized right to undertake immediate action of its own, to include the imposition of sanctions, against Plaintiffs. *See id.* at 11.  Further, Defendants claim that, "[f]lowing from their regulatory mandated right to sanction, OMIG and DOH also possessed a legal obligation to contact Medicaid recipients potentially impacted by the findings or sanctions imposed against Cutie Pharma-Care."  *See id.* (citing Public Health Law § 32(6)).

Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages but also "immunity from suit").  "[T]he salient question [in determining

---

[7] Plaintiffs' amended complaint does not add any additional claims, but simply include additional facts in support of their arguments.

qualified immunity] is whether the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As qualified immunity is an affirmative defense, the burden of pleading it falls on the defendants. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted); *see also Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (holding that "defendants bear the burden of showing that the challenged act was objectively reasonable" (citation omitted)).

The qualified immunity determination consists of two steps, which a court may consider in either order. *See Seri v. Bochicchio*, 374 Fed. Appx. 114, 116 (2d Cir. 2010) (citation omitted). The first step is to determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal and other citation omitted). The second is a determination of "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citation omitted). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"[U]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (citation omitted). However, qualified immunity may "be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint[,]" *id.* at 436; or if it is based on facts of which the court may take judicial notice, *see Martin v. County of Nassau*, 692 F. Supp. 2d 282, 294 (E.D.N.Y. 2010) (citation omitted).

In the present matter, Defendants are not entitled to qualified immunity at this early stage in the proceedings. Although they are correct that the regulations that they rely upon permit them

to "sanction the person and any affiliate" upon a finding of professional misconduct by the DOE, the regulations do not state that they are "required" to call Plaintiffs' customers to notify them that Plaintiffs may be, at some unknown time in the future, subject to expulsion from Medicaid and criminal indictment.  Further, in the consent order, Plaintiffs did not admit to engaging in criminal conduct, but simply admitted that they committed "unprofessional conduct . . . (by violating pharmacy laws and regulations)[.]"  *See* Dkt. No. 13-2 at 2.

Based on the foregoing, the Court finds that the facts as alleged in the complaint and amended complaint simply do not support a grant of qualified immunity at this early stage in the proceedings.  Accordingly, Defendants' motion to dismiss is denied.

## E.      Plaintiffs' state-law claims

Defendants argued that Plaintiffs' state-law claims must be dismissed because they failed to plead a viable federal cause of action.  Defendants did not, however, discuss the merits of Plaintiffs' state-law claims.  Since the Court has denied Defendants' motion to dismiss Plaintiffs' federal causes of action, the Court denies Defendants' motion to dismiss the state-law causes of action.[8]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

---

[8] Plaintiffs' complaint and amended complaint both reference the fact that Defendants' actions violated their due process rights.  It is unclear, however, whether they are attempting to assert a separate due process cause of action.  Since Defendants did not address this point in their motion to dismiss, the Court declines to undertake *sua sponte* review of this claim.  *See Behrend v. Klein*, Nos. 04-CV-5413, 04-CV-5414, 2006 WL 2729257, *3 n.1 (E.D.N.Y. Sept. 25, 2006).

19

**ORDERS** that Defendants' motion to dismiss is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Plaintiffs' motion to amend the complaint is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs shall file and serve its amended pleading within **FOURTEEN (14) DAYS** of the date of this Order in accordance with the Local Rules; and the Court further

**ORDERS** that all further pretrial matters are referred to Magistrate Judge Treece; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 5, 2011
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

20